# LAW OFFICES OF YAN MARGOLIN

315 West 36th Street | New York, NY 10018
T: (212) 964-6200 | E: Yan@MargolinLawNY.com

May 12, 2020

**Via ECF**
Hon. Madeline Cox Arleo, U.S.D.J.
Hon. Leda D. Wettre, U.S.M.J.
United States District Judge
50 Walnut Street
Newark, New Jersey 07101

Re:   *OREC NJ, LLC v. Levine et al*
      *No. 19-cv-17421 (MCA) (LDW)*

Dear Judges Arleo and Wettre,

This firm is New York-based counsel to Park National Capital Funding, LLC ("Park National"), and J & J Realty Associates LLC (J & J"), both of whom are secondary mortgagees on 10 of the 70-something properties involved in the fraudulent scheme perpetrated by Seth Levine. The Law Offices of Barry Miller are local New Jersey counsel to Park National and J & J. This letter is in response to the letter submitted on May 12, 2020 by the Nathaniel Ari Weisbrot, Esq., who represent several investors in various Levine-owned entities. In this letter, Mr. Weisbrot dramatically demands that his clients, who are not lenders, but investors, be paid off ahead of the non-institutional mortgagees he derisively refers to as "'lenders' with questionable mortgages." Mr. Weisbrot's letter should be ignored by the Court.

First, Mr. Weisbrot (using emotion and references to the Holocaust rather than legal argument) suggests that his clients should be repaid ahead of, or commensurate to, secured lenders. This is a legally absurd position. Mr. Weisbrot's clients are *investors*. They are not lenders who are limited in how much they can earn via the transaction, but those that threw their lot in with Seth Levine in hopes of seeing returns on their investment. As such, they are co-joint-ventures who share both profits *and losses* of the venture. There is no question (and so far, only Mr. Weisbrot has suggested otherwise) that the order of repayment of the debts of real estate-owning LLC's is as follows:

1. Mortgagees secured by real estate in the order of their seniority.

2. UCC lenders who loaned to the LLC in question and were secured by financing statements against the shares of the LLC, and whose interest was recorded via a UCC Financing Statement.
3. Unsecured outside creditors.
4. Members of the LLC.

As co-owners, Mr. Weisbrot's clients are last. The very nature of their interest is unsecured. The phrase used by Mr. Weisbrot describing his clients as "non-institutional investors" is misleading; the institutions in question (US Bank, CitiBank) were not investors at all, and neither were Park National or J & J. In fact, to repay distributions to partners or members (Mr. Weisbrot's clients) while outside debts exist would be a tortious wrongful distribution.

Mr. Weisbrot also suggests that "some lenders made loans based on forged authorizations or fraudulent misrepresentations." These sorts of claims are often made by minority partners against lenders (arguing alleged lack of authority by the manager to enter into the loan), and they are almost-always losing arguments. The undersigned can only speak for Park National and J & J, but the second mortgages we acquired are clearly protected by apparent authority, and our clients were bonafide purchasers for value. Mr. Weisbrot's claims, allegedly made in a separate suit, are not reason to suspend payment to second mortgagees that stand in the clear line of recovery after the larger first mortgages. What Mr. Weisbrot claims is a "significant likelihood" that secondary mortgages will be discharged due to alleged fraud is nothing more than bluster, and is, in truth, a loser's lament.

Mr. Weisbrot claims that equity requires that his clients, who actively invested with Mr. Levine, should be paid before institutional investors, or secondary mortgagees. His clients should have considered this *before* becoming partners with Levine, and granting him authority over the entities they claim now to have owned interest in. However, this sabre-rattling by Mr. Weisbrot is nothing more than an attempt to use any leverage he can to better his clients' untenable legal position. These "investors" only have a right to money that the Levine-owned

LLC they invested in does, and given that those LLC's come *after* all lenders, these "investors" are equally entitled to nothing.

      The proposed sales of Levine-owned properties are fraught with enough difficulty as well. Mr. Weisbrot's clients have no standing to contest any amounts to be dispersed, and should not be allowed to disrupt the ability of *secured creditors* to rightfully collect well ahead of any alleged partners or minority members. To the extent these individuals have suits against any lender, such suits are for money damages, and can be resolved after payment of any sales proceeds. Mr. Weisbrot's demand to alter the course of the sales, and to in essence place an injunction on paying lenders and the receiver should be ignored.

      Thank you so much.

Yours,

/s/Yan Margolin

Yan Margolin, Esq.

YM
cc: All counsel of record